USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

LEMREY ANDREWS,

                           Petitioner,

                                        **MEMORANDUM AND ORDER**

            v.
                                        08 Civ. 3325 (NRB)

UNITED STATES OF AMERICA,

                           Respondent.

----------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Lemrey Andrews ("petitioner") brings this petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2255.  Andrews challenges

his August 27, 2002 conviction after a jury trial of participating

in a racketeering organization, in violation of 18 U.S.C. §§ 1961,

1962(c)  (Count  1  of  the  indictment);  participating  in  a

racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count

2); conspiracy to murder in aid of racketeering, in violation of 18

U.S.C. § 1959(a)(5) (Count 3); transporting women in interstate

commerce for the purposes of promoting prostitution, in violation

of 18 U.S.C. § 2421 (Count 23); enticing and coercing women in

interstate commerce for the purposes of promoting prostitution, in

violation of 18 U.S.C. § 2422(a) (Count 24); using a firearm in

connection with a crime of violence, in violation of 18 U.S.C. §

924(c)  (Count  31);  and  possessing  a  firearm  after  having  been

convicted of a felony, in violation of 18 U.S.C. § 922(g) (Count

37).   Andrews also challenges his April 16, 2003 sentence of 352

                              1

months in prison, which is comprised of: 240 months on Count 1, 52 months on Count 2 and 60 months on Count 31, all to run consecutively, as well as 120 months on Counts 3, 23, 24 and 37, running concurrently with each other and with the 352 month aggregate sentence.

Andrews seeks to set aside his conviction and sentence on the grounds of ineffective assistance of his trial counsel, Robert Koppelman.   For the reasons that follow, Andrews' petition is denied.

## BACKGROUND[1]

### I.   The Attempted Murder of K-Born

Andrews -- who was also known as "Pimp," "Bloody Pimp" and "Young Redd" -- was a high-ranking member of the notorious "Bloods" street gang.   Andrews was responsible for the gang's prostitution-related activities.

In the summer of 1999, Philip Hartley, a member of the Bloods, began selling drugs in concert with an individual known as "K-Born," who was not a member of the Bloods.   After a money-related dispute between the two men, K-Born and an associate of his confronted Hartley in a local McDonald's, beat him and stabbed him. Following his release from the hospital, Hartley met with various Bloods to discuss retaliation.   Soon thereafter, Andrews and

---

[1]   Unless otherwise indicated, the following facts are drawn from the Petition ("Pet."); Government's Memorandum in Response to the Petition ("Gov't Memo."); the Second Circuit decision in United States v. Portee et al., 129 F. App'x 652 (2d Cir. 2005); and the record in United States v. Portee et al., No.

another man, Victor Frazier, went to K-Born's apartment. According to Frazier's testimony, Frazier had a Tec-9 firearm with him and Andrews had an AK-47. Frazier knocked on the door, posing as one of K-Born's associates. When K-Born responded but failed to open the door, Frazier looked for a signal from Andrews. After Andrews "nodded his head," Frazier fired approximately twenty rounds into the door, wounding K-Born. Trial Transcript ("Tr.") (July 11, 2002) 3811.

## II. **Plea Discussions and Legal Proceedings**

Andrews was eventually charged -- along with fourteen co-defendants -- in a 31-count indictment on May 7, 2001. Shortly thereafter Andrews explored the possibility of serving as a cooperator. On June 7, 2001, the Government interviewed Andrews pursuant to a proffer agreement in the presence of his attorney, Koppelman. During that session, Andrews admitted, among other things, that "he transported women across state lines for the purpose of prostitution," that "he assaulted and manipulated his prostitutes," that "he utilized the Bloods to provide 'protection' for his prostitutes" and that he "had obtained [a firearm] in North Carolina" that he used during a failed robbery attempt. July 23, 2008 Affidavit of former Assistant United States Attorney Daniel Gitner ("Gitner Aff.") at 1, 2, the lead prosecutor.

---

01 Cr. 450(NRB) (S.D.N.Y. filed May 7, 2001).

After the proffer session the Government "advised Mr. Koppelman that the Government was not interested in negotiating a cooperation agreement with Mr. Andrews" and "Mr. Koppelman and [the Assistant] engaged in plea discussions." Id. at 2. On August 22, 2001, the Government sent Koppelman a draft of a proposed plea agreement, which "contemplated a sentencing range of 151 to 188 months," but did not provide for cooperation. Id. Andrews "rejected the offer and opted to proceed to trail." Id.

After nine indicted defendants pled guilty, jury selection commenced in the trial of Andrews and three others on June 10, 2002. The Government and defense counsel delivered opening statements on June 19, 2002. On July 2, 2002, the Government notified Koppelman and the Court that it intended on playing a portion of an audiotape that contained a call made by Andrews from prison to an unidentified male on June 12, 2001. Tr. (July 2, 2002) 3051. While the Government had turned over copies of more than 60 audiotapes to defense counsel approximately a month before trial, Koppelman reported that the Government had given him a blank copy of the June 12, 2001 audiotape.[2] Id. at 3050; Tr. (July 3, 2002) 3221. Koppelman stated that he had listened to the tape but had not reported to the Government that it was blank. Id. at 3222.

Once Koppelman received another copy of the audiotape and listened to it, he raised numerous objections regarding which portions of the tape should be admitted into evidence. The

---

2  Counsel for other defendants also stated that the copies of the June 12, 2001 audiotape that they had received from the Government were blank. Tr. (July

4

argument on the tape consumed 43 pages of the trial transcript and the Court ruled in his favor on multiple requests for redaction. Tr. (July 10, 2002) 3660-3703; Tr. (July 11, 2002) 3727.   This argument, and the attendant rulings, occurred before the jury heard any excerpts from the June 12, 2001 audiotape.

At issue in this petition is one excerpt from the June 12, 2001 prison call that was admitted in evidence:

Andrews:   It's all 'cause somebody implicated me.   A [cooperator] that they caught that's fu-, that started the case wound up telling.   And they, when you tell, you got to tell your whole past history.   So he implicated me as being there.   I, I, to-, um, I came to, I went to an apartment with him with a AK, but I ain't never shoot the gun.   I just was there.   You know what I'm saying?   So, he implicated me . . .

Gov't Ex. 941-TR-R at 3.   While the Government argued that this excerpt contains an admission of guilt -- "I went to an apartment with him with a AK" -- Koppelman argued at length in his summation that, on the contrary, Andrews was telling his friend what Andrews was charged with in the indictment.   Tr. (Aug. 14, 2002) 6852-53. Andrews, Koppelman argued, wouldn't have admitted guilt on a prison line that he knew was being recorded.   Id. at 6859-60.

On August 27, 2002, the jury found Andrews guilty on seven counts of an eight count superseding indictment, S6 01 Cr. 450 (NRB), but found Andrews not guilty on Count 4, attempted murder in aid of racketeering, 18 U.S.C. § 1959(a)(5).

Andrews subsequently appealed his sentence and conviction, arguing, inter alia, that he received ineffective assistance of

9, 2002) 3636, 3650.

5

counsel, that his trial was rendered unconstitutional due to jury exposure to media reports and that he should be resentenced pursuant to United States v. Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). The Court of Appeals for the Second Circuit affirmed Andrews' conviction but remanded the case for this Court to consider whether resentencing was appropriate. United States v. Portee, 129 F. App'x 652, 655 (2d Cir. 2005). The Second Circuit declined to rule on Andrews' ineffective assistance of counsel claim, stating that such a claim was "more appropriately addressed in a proceeding pursuant to 28 U.S.C. § 2255." Id.

After briefing by the parties, on April 21, 2006 this Court determined not to modify Andrews' original sentence. Again, Andrews appealed and, again, the Second Circuit affirmed this Court's judgment but declined to reach the question of ineffective assistance of counsel. United States v. Andrews, 254 F. App'x 835 (2d Cir. 2007). Andrews then filed the instant petition, with his sole claim being one of ineffective assistance of counsel.

## DISCUSSION

### I.    Standard of Review

A claim of ineffective assistance of counsel is analyzed under the two-part standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a "defendant claiming ineffective assistance must (1) demonstrate that his counsel's

performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005)(quoting Strickland, 466 U.S. at 688, 693). "[T]he burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984).

In assessing ineffectiveness, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688. In carrying out this inquiry, "[j]udicial scrutiny of counsel's performance must be highly deferential" and the court should make every effort "to eliminate the distorting effects of hindsight." Id. at 689.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001); United States v. Reiter, 897 F.2d 639, 645 (2d Cir. 1990).

A petitioner can demonstrate prejudice by showing he would have accepted a plea offer but for his counsel's ineffective assistance. See, e.g., Boria v. Keane, 99 F.3d 492 (2d Cir. 1996). In this context, courts have been reluctant to credit the self-serving testimony of convicted felons. See Toro v. Fairman, 940

7

F.2d 1065 (7th Cir. 1991)(holding that petitioner's self-serving statements must be supported by some "objective evidence" that he would have accepted the plea offer); Purdy v. Zeldes, 337 F.3d 253 (2d Cir. 2003)("in most circumstances a convicted felon's self-serving testimony is not likely to be credible").

Lastly, in considering an ineffective assistance of counsel claim, the district court has discretion to determine whether an evidentiary hearing is required. 28 U.S.C. § 2254; Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003). If appropriate, the district court can choose to proceed on the basis of written submissions.[3] See id.; Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001).

## II. Analysis

### A. Performance Inquiry

Petitioner argues that he received constitutionally defective representation because Koppelman did not notify the Government when he discovered that one of the tapes the Government had given him was blank. Andrews' Petition for a Writ of Habeas Corpus ("Petition") at 18. Importantly, petitioner does not challenge any other aspect of Koppelman's performance during the twelve months leading up to trial or during the trial itself. Id. at 10.

To begin, it is beyond cavil that it would have been better practice for Koppelman to have pointed out the blank tape to the

---

3 We employ that approach here, and proceed on the basis of the affidavits

8

Government.    But,  as  the  Government  notes,  in  assessing  the
adequacy of counsel we "examine the totality of counsel's efforts."
Harris v. Hollins, No. 95 Civ. 4376(HB), 1997 WL 633440, at *6
(S.D.N.Y. Oct. 14, 1997)(citing Strickland); Gov't Memo. at 8.

    We now turn to Koppelman's performance.  As this Court was
able to witness first-hand, Koppelman was a vigorous advocate for
Andrews in the months leading up to trial and at the trial itself.
Koppelman aggressively pursued pre-trial motions, offered a cogent
opening statement, cross-examined witnesses effectively, raised
appropriate objections and delivered a comprehensive summation.

    When the Government notified Koppelman on July 2, 2002 -- two
weeks into the three-month trial -- that it intended to introduce
excerpts from the June 12, 2001 prison call, Koppelman was given
ample time to review the 12-minute tape and prepare his objections.
Indeed, on July 10, 2002, a week later, Koppelman argued forcefully
that certain portions of the tape should be redacted and this Court
ruled in Koppelman's favor multiple times.    Tr.  3660-3703;  Tr.
(July 11, 2002) 3727.

    Furthermore, in his summation Koppelman provided a plausible
alternate explanation for Andrews' alleged confession: that Andrews
was recounting to his friend what he was *alleged* to have done.  Tr.
(Aug. 14, 2002) 6852.    In support of this proposition, Koppelman
both offered a detailed contextual analysis of the call transcript
and argued compellingly that Andrews wouldn't have confessed on a

submitted by Andrews, Koppelman and the Government.

phone line that he knew was recorded.  Id. at 6855-60.  To show that Andrews knew that the prison line was being recorded, Koppelman pointed to trial testimony regarding "signs near the [jail] phones that say you are going to be recorded" and noted that Andrews himself stated later in the June 12, 2001 call that "they be on some serious recording phone calls."  Id. at 6859-60; Gov't Ex. 941-TR-R at 7.  Thus, once Koppelman was able to listen to the tape, he aggressively acted to mitigate any damage it might have caused.

As stated above, petitioner does not challenge any aspect of Koppelman's performance other than his failure to notify the Government of the blank tape.  Indeed, Koppelman's record both before and after the tape came to his attention is one of vigorous advocacy on Andrews' behalf.  Assessing the entirety of Koppelman's representation, we hold that petitioner has not established that Koppelman's performance "fell below an objective standard of reasonableness" in light of "prevailing professional norms." Strickland, 466 U.S. at 688; see Henry v. Poole, 409 F.3d 48, 58 (2d Cir. 2005)("The Constitution guarantees a defendant a fair trial, not a perfect one.  Isolated errors in counsel's representation generally will not rise to the level of ineffectiveness, unless the error is so serious that defendant did not receive a fair trial.")(citations and quotations omitted).

While our finding that petitioner did not meet his burden on Strickland's performance prong is alone sufficient to require

10

denial of the petition, as described below we also consider, and reject, petitioner's argument that he has "affirmatively prove[n] prejudice" arising from Koppelman's allegedly deficient performance.  Strickland, 466 U.S. at 693.

## B.   Prejudice Inquiry

Andrews argues that Koppelman's defective performance created a "reasonable probability" of prejudice because, had Koppelman heard the June 12, 2001 conversation prior to the start of trial rather than two weeks into the trial, Koppelman "would have advised petitioner to take and [sic] early plea and cooperate with the government" and Andrews would have done so.  Id. at 694; Petition at 17.  Significantly, Andrews does not argue that the outcome of his trial would have been different if Koppelman had heard the tape earlier.

In support of his argument, Andrews has submitted an affidavit that states he "would have plead [sic] guilty and cooperated with the government rather than go to trial had I been advised to do so by my trial attorney."  March 11, 2008 Affidavit of Lemrey Andrews ("Andrews Aff.") at 1.  Andrews has also submitted an affidavit from Koppelman, in which Koppelman states "If the government had sent me the recorded conversation instead of the blank tape, I would have advised Lemrey Andrews to plead guilty and cooperate with the prosecution rather than go to trial."  January 12, 2006 Affidavit of Robert Koppelman ("Koppelman Aff.") at 1.

But what these statements do not acknowledge is that, even had Koppelman notified the Government that the tape he received was blank and obtained the recording, Andrews would not have had the option of cooperating. That option was taken off the table after the Government interviewed Andrews in the presence of Koppelman and pursuant to a proffer agreement on June 7, 2001, over a year before the start of the trial. After Andrews admitted, inter alia, that "he transported women across state lines for the purpose of prostitution" and that "he assaulted and manipulated his prostitutes," the Government informed Koppelman that it "was not interested in negotiating a cooperation agreement with Andrews."[4] Gitner Aff. at 1, 2. The Government and Koppelman then engaged in plea discussions, which culminated in the August 22, 2001 draft of a proposed plea agreement that did not include a cooperation agreement and that contemplated a sentencing range of 151 to 188 months. Id. at 2. Andrews decided to reject that offer. Id.

It is clear from the record, then, that approximately nine months before Koppelman received the blank tape from the Government,[5] the Government rejected Andrews as a potential cooperator and Andrews rejected the Government's proposed plea agreement. Thus, the suggested "prejudice" is without basis as clearly established by the documented record of pretrial plea

---

4 Having heard the trial testimony, we certainly understand the Government's decision not to use Andrews as a cooperating witness.

5 The Government turned over the tapes "three weeks to a month before trial" and opening arguments were delivered on June 19th, 2002. Tr. (July 2, 2002) 3050.

negotiations.  Nothing Koppelman might have done after receipt of the blank tape could possibly have changed the events that had occurred months before.

Additionally, even if Andrews and Koppelman were to now change their affidavits to indicate that Andrews also would have pled guilty in the absence of a cooperation agreement, such representations would not be credible.

First, in the absence of corroboration, Andrews' self-serving, post-conviction affidavit testimony is insufficient as it is unreliable.[6]  As corroboration, petitioner offers statements from the June 12, 2001 prison call in which Andrews expresses an interest in cooperating with the Government.  Petition at 26.  But other statements from that same call make it clear that the reason Andrews was interested in cooperating was because he believed he could secure a plea agreement that involved almost no jail time. Petition at A. 83 ("especially if I cooperate, I got a chance of just getting right out").  Andrews' interest in June 2001 in securing a plea deal that would allow him to "get[] right out" is

---

6  The Seventh Circuit has held that such testimony alone is not sufficient to demonstrate the required "reasonable probability" that a defendant would have accepted a plea offer; additional "objective evidence" is required.  See Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991); see also Johnson v. Duckworth, 793 F.2d 898, 903 n.3 (7th Cir. 1986).  There is disagreement as to whether the Second Circuit adopted the "objective evidence rule" in United States v. Gordon, 156 F.3d 376 (2d Cir. 1998).  Compare Khan v. United States, No. 97 Civ. 3252, 2000 WL 1738414, at *7 (S.D.N.Y. Nov. 22, 2000)("it is incumbent on the petitioner to show 'objective evidence' beyond 'self-serving, post-conviction testimony'") with Purdy v. Zeldes, 337 F.3d 253 (2d Cir. 2003)("the better reading of Gordon is a simple recognition that in most circumstances a convicted felon's self-serving testimony is not likely to be credible").  Because we find that, regardless of whether the "objective evidence rule" applies here, petitioner has not met his burden of demonstrating a "reasonable probability" of prejudice under Strickland, we need not decide whether the "objective evidence rule" applies.

one thing. However, the record is clear that, well before trial, Andrews rejected a plea agreement which carried a substantial sentence.

Second, and most important, nowhere do Andrews or Koppelman (or the Government, for that matter) state that petitioner approached the Government to express an interest in pleading guilty once Koppelman and Andrews did listen to the prison call. Thus, Andrews' actual behavior -- as opposed to the behavior he argues he might have engaged in -- suggests that he had little or no interest in pleading once he saw the substantial sentence contemplated in the Government's August, 2001 plea offer. His statements to the contrary are completely suspect.

In sum, we find that petitioner has not demonstrated a "reasonable probability" of prejudice under Strickland. First, the record flatly undermines petitioner's claims that, had Koppelman heard the contents of the tape a month before trial, Andrews would have been given the opportunity to plead as a cooperator. Second, even if petitioner were to now argue that he would have pled without a cooperation agreement, such a statement would not be credible as it is contradicted by the record.

## CONCLUSION

Because petitioner has failed to demonstrate that Koppelman's performance "fell below an objective standard of reasonableness" in light of "prevailing professional norms" and failed to

14

"affirmatively prove prejudice," we deny in its entirety Andrews'
petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255.
Strickland, 466 U.S. at 688.  As Andrews has not made a substantial
showing of the denial of a constitutional right, a Certificate of
Appealability will not issue.  See 28 U.S.C. § 2253(c).


      **IT IS SO ORDERED.**

Dated:     New York, New York
           March 31, 2009

                             NAOMI REICE BUCHWALD
                             UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Counsel for Petitioner

Jonathan Svetkey, Esq.
Watters & Svetkey, LLP
286 Madison Avenue, Suite 1800
New York, NY 10017

Counsel for Respondent

Elizabeth F. Maringer, Esq.
Assistant United States Attorney
One Saint Andrew's Plaza
New York, NY 10007