# WATTERS & SVETKEY, LLP.

**Kyle B. Watters**
Attorney at Law

286 Madison Avenue, Suite 1800
New York, New York 10017



**Jonathan Svetkey**
Attorney at Law

Tel (212) 679-8999
Fax. (212) 679-9791

August 5, 2008

The Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   USA v. Lemrey Andrews 08 Civ. 3325 (NRB)

Your Honor:

This letter is submitted in response to the government's opposition to petitioner's request for habeas relief.

The government's papers provide no grounds upon which to deny petitioner's application and in fact contain additional information reinforcing the basis for granting the writ.

The government in the first instance mistakenly focuses on the attorney's trial performance and the overwhelming evidence of petitioner's guilt. The competence of the attorney's trial performance is not at issue; the unrebutable proof of guilt merely highlights counsel's deficient representation at the plea stage. This is the crux of petitioner's claim. Had counsel provided the constitutionally required effective assistance to petitioner, he would have plead guilty and would be spending dramatically less time in jail time.

In order to provide effective advice concerning whether to plead guilty and/or cooperate as opposed to going to trial, counsel had to make a reasonable assessment of the government's case. The failure to listen to the tape containing petitioner's admission that he was armed and present for the K-Born shooting, which was the basis for the most serious charges in the case and consequently, convictions for which

1

carried the most severe punishment, made it impossible for him to make this assessment. He therefore could not and did not meaningfully advise petitioner about the strength of the government's case and the risks of going to trial.

This is the essence of counsel's constitutionally deficient representation as identified by the cases cited in the petition at pages 21-22. See United States v. Day, 969 F.2d 39, 43 (3d Cir.1992)("a defendant has the right to make a reasonably informed decision whether to accept a plea offer")(citations omitted); cf. Shiwlochan v. Portuondo, 345 F.Supp2d 242, 260 (EDNY 2004)("Indeed, counsel is constitutionally required to give a defendant some advice regarding a plea offer, such as informing the defendant of the strengths and weaknesses of the prosecution's case.")(citations omitted); see also Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 322 (1948)("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered"); see generally United States v. Gordon, 156 F3d 376, 380 (2d Cir. 1998)(counsel breached duty, "to advise his client fully on whether a particular plea to a charge appears desirable")(citation omitted).

Despite the government's best attempts, the burden does not shift to petitioner on this issue. Their claim, "[t]hat his attorney may have failed to listen to the tape does not alter the fact that Andrews himself knew both what he said and that his statement could be used against him at trial" [Government's Letter dated July 24, 2008, hereafter "Government Letter", page 10], to excuse counsel's conduct is unavailing. Similarly without merit is their argument that petitioner, ". . . cannot now, with the benefit of hindsight, claim that he would have taken the offer had his attorney listened to a tape that contained statements that Andrews well knew he had made and could be used against him." Government's Letter, page 12.

There is no evidence that petitioner recalled that he made this statement or could at all assess the impact it might have on an attorney's evaluation of the government's proof. Petitioner who made at least 63 calls from prison, could not be reasonably expected to remember all of his conversations and whether or not any of them contained admissions. The pre sentence report indicates that petitioner left school at the age of 13, before completing the eighth grade. He smoked marijuana daily from that time on until his arrest on this case thirteen years later. Trial counsel's own failings caused him not to know about the statement that resulted in his providing

2

petitioner constitutionally deficient advice about whether or not to plead guilty.

It was imperative for counsel to review all of the discovery provided to determine if the government had a recording that could damage petitioner's case at trial. Cf. Peterkin v. Horn, 176 F.Supp2d 342, 375 (E.D. Pa. 2001)("while counsel's actions may be based on information supplied by the defendant, the Courts of Appeals are generally in agreement that the failure to conduct any pretrial investigation constitutes a clear instance of ineffectiveness")(citation omitted).

As the government points out [Government's Letter, page 4], this was no minor oversight, with arguments on the issue consuming 43 pages of the trial transcript. Trial counsel became so upset about the issue that he left chambers during the discussion of how to deal with it. Although he argued that the government had sandbagged him with the taped call, the court correctly countered that counsel's failure to obtain an audible tape after he discovered that it was blank did not shift the problem to the government. Just as counsel could not shift the problem to the government for his failure to review this important piece of discovery the government cannot now shift the responsibility for counsel's failure to conduct that review onto petitioner.

This is the implicit finding of Boria v. Keane, 99 F.3d 492 (2d Cir. 1996), where the court noted that had counsel, "taken the trouble to learn of the ruinous statements petitioner had made after his arrest, the probability of persuading him to accept the plea bargain would have matured from a reasonable probability to a very strong likelihood". Id. at 497-498.

The government provides no argument that this was not a piece of evidence essential to any competent counsel's evaluation of the strength of the prosecution's case. The government offers no excuse, strategic or otherwise, for counsel's failure to review the tape. Thus, on the issue of attorney competence, there can be no finding but that counsel's performance was constitutionally deficient.

The government fares no better on the issue of prejudice. Trial counsel in his affirmation admits that he would have advised petitioner to plead guilty had he been aware of the taped admission. Petitioner, in his sworn statement [at page 88 of the appendix annexed to the petition], states that he would have plead guilty and cooperated had he been advised to do so by counsel. And there is a substantial

3

disparity in the sentence imposed after trial - 352 months in jail - as opposed to what petitioner could have been expected to receive if he had plead guilty and/or cooperated. Indeed, the plea offer contemplated a 151 to 188 month sentence. Thus, petitioner established that had he received effective counsel the results of the proceedings would have netted him at least 164 months less time in jail.

The government complains that petitioner, ". . . relies on additional, self-serving statements he made to an unidentified male in that same conversation to persuade the court that he would have cooperated had he known the government was going to use his admission against him. These statements, however, were made to some unknown person for an unknown purpose. They were nothing more than self-serving rhetoric and cannot be relied upon to establish that Andrews, in fact, wanted to cooperate. More important, however, is the fact that, by the time he made that call, Andrews already tried to cooperate and failed." Government's Letter, page 11.

Petitioner expressing his interest in and intent to plead guilty in this telephone conversation cannot be characterized as self serving under these circumstances. His statement was made not for "an unknown purpose" but to explain to the unidentified person why it was acceptable for petitioner to plead guilty and/or cooperate and thereby, of necessity, implicate the leader of the organization. Petitioner offers that he, ". . . ain't going out like no sucker or nothing . . . but my homie's finished already", noting as well that, "On some yo, if you cooperate, ooh-aah, and I'm like yo, dude finished. He should let everybody that got a chance to go home, go home . . . " (A. 82). The statement reveals petitioner's recognition that the course of action he plans to take might be questioned as an act of disloyalty with the implicit ramification that he could subject himself to retaliation.

Further, contrary to the government's assertion, it is clear from the telephone call that counsel had not yet informed petitioner that the prosecutor was not interested in his cooperation. Petitioner's telephone conversation five days after the proffer makes no acknowledgment that the proffer was not accepted.

Moreover, cooperation was not necessarily foreclosed after this one time proffer. It appears that it was rejected in the first instant not because of any failure on petitioner's part but due to the government's lack of interest in the subject matter covered. Indeed, the June 7, 2001 proffer session focused exclusively on petitioner's prostitution activities on behalf of the Bloods. There was no information provided

about the K-Born shooting. This new subject certainly would have been worth exploring with the government after it came to light on the tape. It would have been unremarkable for the government to entertain a second proffer in these circumstances if counsel had determined that that was the best course of action to take.

Even if cooperation was completely off the table, the plea offer contemplating a 151 to 188 month guideline range as opposed to the 352 months imposed after trial establishes that, if properly advised, petitioner would have plead guilty.

The government's argument that petitioner could have plead guilty mid-trial when counsel's error came to light [Government's Letter, page 14] does nothing to undermine the basis for granting the writ. There is a significant difference between the benefits of plea bargaining prior to trial as opposed to negotiations attempted weeks into the prosecution's case. Moreover, if a mid-trial plea had been a viable option, the failure to explore it merely highlights counsel's failings.

Finally, the government provides no reason for this Court to ignore the well-established legal principle that, "a disparity [in plea offer and ultimate sentence] provides sufficient objective evidence-when combined with a petitioner's statement concerning his intentions-to support a finding of prejudice under Strickland." United States v. Gordon, 156 F.3d 376, 381 (2d Cir. 1998); see also Shiwlochan v. Portuondo, 345 F.Supp2d 242, 262 (EDNY 2004)(given vast disparity between plea offer and maximum prison term possible court accepted defendant's claim that he would have abandoned his claim of innocence and accepted the offer); see also Mask v. McGinnis, 233 F.3d 132, 142 (2d Cir.2000) (prejudice requirement is satisfied and overcomes defendant's prior protestations of innocence where defendant testifies to his willingness to accept a reasonable plea bargain and there is a great disparity between the sentence exposure at trial and in the plea bargain); Cullen v. United States, 194 F.3d 401, 407 (2d Cir. 1999)(Court recognizes that had the petitioner been informed of the disparity between his likely sentence after trial and under the plea offer, he might well have abandoned his claim of innocence).

Petitioner would welcome the opportunity to submit additional evidence by way of his and/or trial counsel's testimony or supplemental sworn statements to answer any questions the Court may have about the issues raised in his application. But he maintains that on the record now before the Court the writ should be granted.

Respectfully submitted,

Jonathan Svetkey

cc:
AUSA Elizabeth Maringer